# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI CHAVEZ-DEREMER, SECRETARY OF LABOR, U.S. DEPARTMENT OF LABOR,<br><br>　　　　Plaintiff,<br>　v.<br>COWAY USA, INC.,<br>　　　　Defendant. | 2:24-cv-08156-JLS-AJR<br><br>**MEMORANDUM DECISION AND ORDER ISSUING PROTECTIVE ORDER TO GOVERN EXCHANGE OF CERTAIN CONFIDENTIAL INFORMATION** |

## I.
## INTRODUCTION

This is a wage and hour enforcement action brought by the Plaintiff Secretary of Labor, U.S. Department of Labor ("Plaintiff"), under the Fair Labor Standards Act (the "FLSA") against Defendant Coway USA, Inc. ("Defendant") to recover allegedly unpaid overtime compensation owed to Defendant's employees under Section 207 of the FLSA, 29 U.S.C. § 207, as well as liquidated damages. (Dkt. 1.) Plaintiff also seeks relief under Section 17 of the FLSA, 29 U.S.C. § 217, to permanently enjoin Defendant from violating the FLSA. (Id. at 2.) Specifically, Plaintiff alleges that Defendant failed to pay its employees – known as "Codys" and

"Codocs" – for all hours worked, including by failing to record all hours worked, falsifying time records, automatically deducting time, and using a depressed and incorrect regular rate figure to compute overtime pay. (Id. at 3-8.)

The parties have been engaged in discovery for several months with a current Fact Discovery Cutoff of February 27, 2026.[1] (Dkt. 26 at 2.) The Court has conducted six informal discovery conferences to date to assist the parties with various discovery disputes. (Dkts. 37, 38, 40, 47, 57, 67.) Presently before the Court is the issuance of a protective order to govern the exchange of confidential information in this case. On July 18, 2025, the Court issued a Memorandum Decision and Order Denying Plaintiff's Motion to Compel because Defendant had agreed to provide the responsive documents and information sought by the Motion to Compel subject to Defendant's ability to designate the personally identifiable information ("PII"), as well as confidential financial and employment information of its employees as confidential pursuant to the terms of a protective order. (Dkt. 46.) The Court found good cause for the entry of a protective order to permit Defendant to designate this information as confidential and directed the parties to meet and confer on the terms of a stipulated protective consistent with the opinion. (Id. at 11-12.) The parties struggled to actually meet and confer, so the Court ordered Defendant to provide Plaintiff with a proposed protective order and further directed Defendant to provide a redline in response. (Dkt. 67.) On November 17, 2025, the parties provided their competing redlines to the Court by email.

The Court had hoped the parties could agree on the terms of a stipulated protective order, or at least mostly agree and then the Court could resolve the area of disagreement. However, since that did not occur, the Court instead will set forth the terms of a more limited protective order that provides protection for the PII, as well

---

[1] On December 16, 2025, Plaintiff filed a Motion to Extend Deadlines in the Scheduling Order seeking an extension of the Fact Discovery Cutoff until October 27, 2026. (Dkt. 73.)

2

as confidential financial and employment information of Defendant's employees.

## II.

## THE DISCOVERY AT ISSUE

Plaintiff's Interrogatory Nos. 1 and 2 state as follows:

**Interrogatory No. 1:**

Identify all Codys/Codocs who were employed by Coway during the Subject Period by name, title, employee number, last known address, home and cellular telephone numbers, dates of employment, team, and work location. *If a Cody/Codoc changed job positions, identify the date of such change and the new position.*

**Interrogatory No. 2:**

Identify all assistant team leaders, team leaders, Cody branch manager, branch managers, and any other supervisor or manager of the Codys/Codocs, who worked for Coway during the Subject Period, by name, title, supervisory level in relation to the Codys/Codocs (i.e., first level supervisor, second level supervisor, etc.), team, and work location. *If any persons identified pursuant to this interrogatory changed job positions, identify the date of such change and the new position.*

(Dkt. 39-2 at 20.) These interrogatories seek information from October 3, 2020 to the present. (Id. at 15.) Defendant has agreed to produce the documents and information sought by Interrogatory Nos. 1 and 2 subject to Defendant's ability to designate the PII, as well as confidential financial and employment information of its employees as confidential pursuant to the terms of a protective order. (Dkt. 40 at 1.)

Plaintiff's Requests for Production Nos. 12, 13, 15-17, 19-25, and 27-29 seek a variety of documents regarding time, pay, attendance, meetings, trainings,

3

and communications related to Defendant's employees. (Dkt. 39-2 at 72-75.) These requests for production seek documents from October 3, 2020 to the present. (Id. at 68.) Defendant has similarly agreed to produce responsive documents to these requests for production subject to Defendant's ability to designate the PII, as well as confidential financial and employment information of its employees as confidential pursuant to the terms of a protective order. (Dkt. 40 at 2.)

## III.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c), a court may, for "good cause," issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The protective order may contain conditions, such as forbidding discovery, limiting its scope, or requiring that certain information produced in discovery not be revealed publicly or be revealed only in a specified way. See Fed. R. Civ. P. 26(c)(1)(A)-(H). To obtain a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance by establishing "that a specific prejudice or harm will result" if the protective order is not granted. In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 424 (9th Cir. 2011) (internal quotation marks omitted); accord Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). "[B]road allegations of harm, unsubstantiated by specific examples of articulated reasoning" do not satisfy the Rule 26(c) standard. Phillips, 307 F.3d at 1211. "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." Id. The U.S. Supreme Court has interpreted Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is

required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); accord Phillips, 307 F.3d at 1211.

## IV.
## DISCUSSION

The Court previously found good cause for the entry of a protective order, (Dkt. 46), but the Court will repeat the relevant portions of that analysis here. "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips, 307 F.3d at 1210-11. Here, Defendant seeks the ability to designate the PII, as well as confidential financial and employment information of its employees as confidential pursuant to the terms of a protective order. (Dkt. 43 at 6-7.) The Court finds good cause for the entry of a protective order because the interrogatories at issue seek the PII of third-party employees such as their name, employee number, last known address, home and cellular telephone numbers, and work location. (Dkt. 39-2 at 20.) There is also good cause for the entry of a protective order because the requests for production at issue seek a variety of employment records that are highly likely to contain: (1) PII such as Social Security numbers; (2) confidential financial information such as pay rates, wages and salaries, deductions and withholdings, and bank account information; and (3) confidential employment information such as performance reviews and disciplinary records. (Dkt. 39-2 at 72-75.)

Indeed, courts routinely "protect nonparty personal information, including personally identifiable information and health information, using either particular or blanket protective orders." Moore v. Battelle Energy All., 2023 WL 1767391, at *4 (D. Idaho Feb. 3, 2023). "Protecting the privacy of nonparties is particularly important because disclosure of sensitive and potentially embarrassing information would cause serious injury to the nonparty, whose conduct is not at issue in the case." Id.; see also Yith v. Nielsen, 2019 WL 2567290, at *7 (E.D. Cal. June 21,

2019) ("[T]he public release of personal identifying information—including alien numbers, passport numbers, social security numbers, and other information—of individuals who are completely unrelated to this case, would harm those individuals."). Courts similarly "recognize the interest employers and employees have in preserving the confidentiality of sensitive information contained in an employees' records." Kannan v. Apple Inc., 2019 WL 3037591, at *3 (N.D. Cal. July 11, 2019); see also Tumbling v. Merced Irr. Dist., 262 F.R.D. 509, 517 (E.D. Cal. 2009) ("Federal courts have recognized a person's interest in preserving confidentiality of information contained in his or her personnel files.").

      The Court finds that particularized harm will result from public disclosure of the documents and information sought by the discovery requests at issue. For example, the U.S. Department of Labor broadly defines PII as any "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual." See Guidance on the Protection of Personally Identifiable Information (PII), https://www.dol.gov/general/ppii (last accessed Dec. 17, 2025). The U.S. Department of Labor recognizes that "[t]he loss of PII can result in substantial harm to individuals, including identity theft or other fraudulent use of the information." Id. Because of these concerns, the U.S. Department of Labor reminds all contractors and employees "that safeguarding sensitive information" such as PII "is a critical reasonability that must be taken seriously at all times." Id.; see also Mehl v. Blanas, 241 F.R.D. 653, 659 (E.D. Cal. 2007) ("The applications may include social security numbers, dates and places of birth, and mother's maiden names. Public disclosure of this information subjects lay applicants to a heightened risk of fraud if it becomes public."). These same concerns apply to the public disclosure of confidential financial information which would put Defendant's third-party employees at risk of theft and fraud. See, e.g., Calderon v. U.S. Dep't of Agric., 236 F. Supp. 3d 96, 118 (D.D.C. 2017) (recognizing that disclosure of confidential

financial information such as "specific bank accounts numbers and tax ID numbers" would create a "risk for fraud or theft"). Finally, the Court finds that the public disclosure of confidential employment information such as performance reviews and disciplinary records would cause unnecessary embarrassment and violate the privacy rights of Defendant's third-party employees. See, e.g., Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 365 (6th Cir. 1999) (recognizing the need "to protect nonparties from the harm and embarrassment potentially caused by nonconfidential disclosure of their personnel files").

The Court also finds that particularized harm will result from Plaintiff's use of the documents and information sought by the discovery requests at issue for purposes other than this litigation. Indeed, "[c]ourts commonly uphold" limitations on the use of confidential materials obtained through discovery such that the materials may only be used for that specific lawsuit. See, e.g., United States ex rel. Brown v. Celgene Corp., 2016 WL 6542729, at *8 (C.D. Cal. Mar. 14, 2016); On Command Video Corp. v. LodgeNet Entm't Corp., 976 F. Supp. 917, 922 (N.D. Cal. 1997) ("The purpose of the [Protective] Order is to limit the use of confidential information to this case. By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the Protective Order. As such, plaintiff is barred from using any confidential information subject to the Protective Order except in the instant litigation."); Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 220 F.R.D. 349, 353 (N.D. Cal. 2003) (recognizing that a protective order limiting use of confidential materials obtained in discovery to the instant litigation is "a routine measure"); Scott v. Monsanto Co., 868 F.2d 786, 792 (5th Cir. 1989) ("The plaintiffs were free to use any discovery materials in the development of their case. The protective order merely restricted use of those materials to this litigation. Although plaintiffs claim harm from the inability to share and compare information with other litigants in other cases, no prejudice has been shown sufficient to overcome the district court's broad discretion in this area. The

7

entry of the protective order was not an abuse of discretion.").

Plaintiff contends that she must be permitted to share confidential materials obtained through discovery for general "law enforcement . . . outside of this litigation, such as future investigations or prosecutions." (Dkt. 39-1 at 17.) This includes sharing such materials with other federal agencies, such as the U.S. Department of Justice. (Id.) However, the use of confidential discovery materials for general law enforcement outside of this litigation and the sharing of this information with other federal agencies harms Defendant's third-party employees because it subjects them to legal jeopardy including potential immigration enforcement and criminal prosecution. Defense counsel has repeatedly proffered during informal discovery conferences that many of Defendant's employees are foreign nationals (primarily from South Korea) and so sharing their information with federal agencies would have a chilling effect on their willingness to cooperate as witnesses in this litigation.[2] See, e.g., United Farm Workers v. Kristi Noem, 2025 WL 3525914, at *4 (E.D. Cal. Dec. 9, 2025) (finding good cause to limit the use of discovery materials to the instant litigation based on "proffer that disclosure of putative class members' identifying information, including information about their immigration status, may chill them from coming forward for fear of jeopardizing family members or friends" (internal quotation marks omitted)). Indeed, the Ninth Circuit has recognized that "[e]ven documented workers may be chilled" by the sharing of their confidential information through discovery. See Rivera v. NIBCO, Inc., 364 F.3d 1057, 1065 (9th Cir. 2004) ("Documented workers

---

[2] The Court takes judicial notice of widespread media coverage of recent immigration enforcement in Georgia targeting hundreds of South Korean nationals working at a Hyundai/LG battery plant. See, e.g., Massive immigration raid at Hyundai megaplant in Georgia leads to 475 arrests. Most are Korean, CNN, Updated Sept. 6, 2025, https://www.cnn.com/2025/09/05/us/georgia-plant-ice-raid-hundreds-arrested-hnk. This media coverage supports the potential chilling effect on Defendant's third-party employees.

8

Case 2:24-cv-08156-JLS-AJR   Document 76   Filed 12/22/25   Page 9 of 18   Page ID #:1619

may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends; similarly, new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding.").

This particularized harm is not speculative in light of Plaintiff's repeated assertion of its obligation to share discovery materials with other federal agencies for general law enforcement purposes both during informal discovery conferences and in the briefing. (See, e.g., Dkt. 39-1 at 17 & n.12 (highlighting the memoranda of understanding between the U.S. Department of Labor and other agencies such as the U.S. Department of Justice where the agencies agree to share information)); United Farm Workers, 2025 WL 3525914, at *4 ("[T]he arguments Defendants raise in opposition to Plaintiffs' request to prohibit disclosure of discovery materials for purposes unrelated to the litigation of this action tend to confirm their desire and intent to use such information for immigration enforcement purposes."). Therefore, a protective order limiting Plaintiff's use of confidential discovery materials is necessary so that Defendant can provide assurances to its third-party employees that Plaintiff will not be able to use their confidential information for general law enforcement purposes outside of this litigation or share this information with other federal agencies.

Because Defendant has met its burden to show particularized harm that will occur in the absence of a protective order, the Court must balance the public and private interests to decide whether and to what extent a protective order is necessary. See Phillips, 307 F.3d at 1211; accord Kannan, 2019 WL 3037591, at *3. Both the Third and Ninth Circuits have identified for consideration the following list of factors, "which are neither mandatory nor exhaustive":  "1) whether disclosure will violate any privacy interests; 2) whether the information is being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information will cause a party embarrassment; 4) whether confidentiality is being

9

sought over information important to public health and safety; 5) whether the sharing of information among litigants will promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality is a public entity or official; and 7) whether the case involves issues important to the public." Glenmede Tr. Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995); Phillips, 307 F.3d at 1211 (citing to the Glenmede factors). The Ninth Circuit has also explained that even if the balance of public and private interests weighs in favor of a protective order, courts must "also keep in mind the possibility of redacting sensitive material" as an alternative to a protective order. In re Roman Cath. Archbishop of Portland in Oregon, 661 F.3d 417, 425 (9th Cir. 2011).

Based on the factors set forth above, the Court first balances the privacy interests of Defendant's third-party employees and the potential chilling effect on them of sharing their confidential information against Plaintiff's need to contact witnesses and review employment records to determine whether Defendant has complied with the FLSA. See, e.g., Henderson v. JPMorgan Chase Bank, 2012 WL 12888828, at *5 (C.D. Cal. July 5, 2012) ("The Court has balanced the privacy objections being asserted by defendant against the relevance and necessity of the information being sought by plaintiffs."). The Court acknowledges that Plaintiff is seeking the discovery at issue for the legitimate purpose of enforcing the FLSA and that this case therefore involves issues important to the public. However, disclosure of the PII, as well as confidential financial and employment records of Defendant's third-party employees, will violate their privacy interests and cause them embarrassment.

Therefore, the Court concludes that the appropriate balance can be achieved by permitting Defendant to designate the PII, as well as confidential financial and employment information of third-party employees as confidential pursuant to the terms of a protective order. See id. (finding that balance of interests required production of PII and medical information subject to either redactions or a

confidentiality designation under a protective order); Kannan, 2019 WL 3037591, at *3 ("The Court concludes that the appropriate balance here requires permitting Apple to produce *confidential employee-specific* records on an attorneys' eyes only basis."); Knoll, 176 F.3d at 365 (approving of protective orders to protect non-parties from "the harm and embarrassment potentially caused by nonconfidential disclosure of their personnel files").[3]  This balance allows Plaintiff to receive the information she needs, but limits the harm to Defendant's third-party employees because Plaintiff will not be permitted to publicly disclose information designated as confidential.[4]

---

[3] Plaintiff contends that Defendant has waived its privacy objections because it has already produced similar categories of information and documents.  (Dkt. 39-1 at 9-10.)  However, the Court declines to find that any conduct by Defendant could waive the privacy rights of third-party employees.  See Grinzi v. Barnes, 2004 WL 2370639, at *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to protect an employee's privacy interest in his personnel file is to obtain, either by stipulation or motion, a properly crafted protective order under Rule 26(c)."); Stiner v. Brookdale Senior Living, Inc., 2022 WL 1180216, at *3 (N.D. Cal. Mar. 30, 2022) ("Defendants contend, and the Court agrees, that these documents constitute confidential employment records in which Defendants' employees have a reasonable expectation of privacy.").

[4] Plaintiff contends that designating PII as confidential "would unnecessarily conceal and prohibit disclosure of the supervisors and managers responsible for Defendant's wage violations, the names and titles of Defendant's wage theft victims on whose behalf the Secretary brings this action, and other relevant and non-sensitive facts about how Defendant underpaid its workers, including the grossly insufficient wage overtime rates used by Defendant to shortchange its employees." (Dkt. 50-1 at 5.)  However, Defendant's supervisors and managers are not parties to this action, and therefore, they retain a privacy interest in not being publicly named and accused of wrongdoing without a fair opportunity to defend themselves.  Indeed, this would have a very strong chilling effect on Defendant's third-party employees.  If Plaintiff believes that any of Defendant's supervisors or managers have violated the law, then Plaintiff remains free to name them as defendants and the Court agrees that the names and titles of any party should be publicly disclosed.  By contrast, the Court does not believe there is any public interest in publicly disclosing the names of victims.  To the extent Plaintiff wants to publicly disclose non-sensitive facts such as the overtime rates paid by Defendant, or the numbers and titles of alleged victims, Plaintiff can do so as long as she anonymizes the information.

Next, the Court balances the chilling effect on Defendant's third-party employees as to their willingness to participate as witnesses in this lawsuit against Plaintiff's need to use confidential discovery materials for general law enforcement outside of this lawsuit and to share this information with other federal agencies. The Court acknowledges the important interest of Plaintiff and other federal agencies in general law enforcement outside of this lawsuit. But the confidential discovery materials that "are expected to be exchanged in this case are provided for the *sole purpose* of assisting in the preparation and trial, or the settlement, of litigated disputes here." United Farm Workers, 2025 WL 3525914, at *5 (internal quotation marks omitted); see also United States v. Educ. Mgmt. LLC, 2013 WL 1568060, at *9 (W.D. Pa. Mar. 14, 2013) ("Granting other agencies unfettered access to Defendants' confidential information would essentially eviscerate the effectiveness of the protective order and would do nothing to advance the present litigation." (internal quotation marks omitted)), report and recommendation adopted, 2013 WL 1601346 (W.D. Pa. Apr. 12, 2013).

Therefore, the Court concludes that the appropriate balance can be achieved by prohibiting Plaintiff's use of confidential discovery materials for purposes other than this litigation. See United Farm Workers, 2025 WL 3525914, at *5 ("On balance, the Court finds that Defendants' and the public's interest in using discovery materials in connection with unrelated immigration enforcement activities is outweighed by Plaintiffs' and the public's interest in ensuring that the parties, their families, and witnesses in this action may fully participate without fear of reprisal or retribution."); Yith, 2019 WL 2567290, at *8 ("Here, the Court finds Defendants have shown good cause to include a provision limiting use of discovery material to this litigation. Including such a provision will ensure that the privacy interests of the many individuals whose information is scattered throughout Defendants' production are protected."). This balance addresses the chilling effect on Defendant's third-party employees while still permitting Plaintiff and other federal agencies to obtain

information for law enforcement outside of this lawsuit through other means.[5]  See, e.g., Aguilar v. ICE, 2009 WL 1789336, at *5 (S.D.N.Y. 2009) (barring ICE from using discovery materials in connection with third-party prosecutions, but noting that if "ICE learns from other sources of illegal activity by the Plaintiffs or their witnesses, it certainly may proceed with a prosecution on the basis of that independently-obtained information").

This balance also requires that Plaintiff return, destroy, or redact confidential discovery materials at the end of this litigation.  Specifically, Plaintiff must either: (1) return all documents and information designated as confidential; (2) destroy all documents and information designated as confidential; or (3) redact all confidential information and return or destroy all non-redacted copies.  Plaintiff contends that such a requirement would conflict with Plaintiff's recordkeeping obligations under the Federal Records Act and interfere with the public's right to access government records under the Freedom of Information Act ("FOIA").  (Dkt. 39-1 at 16-17.)  However, the National Archives and Records Administration ("NARA") regulations promulgated pursuant to the Federal Records Act provides a procedure for the disposal of records when required by court order.  See 36 C.F.R. §§ 1226.1, 1226.14(e); 44 U.S.C. § 3301.  Indeed, NARA regulations state that "[w]hen required by court order (i.e., order for expungement or destruction), an agency may destroy temporary records before their NARA–authorized disposition date."  36 C.F.R. § 1226.14(e); see also Federal Records Management: Digitizing Permanent Records and Reviewing Records Schedules, 88 Fed. Reg. 28410-01 (May 4, 2023) ("Our regulations at 36 CFR 1226.14 have long accounted for the possibility that a court might order that records be expunged, destroyed, or returned. In these

---

[5] For example, if Plaintiff or another federal agency wants the PII or confidential financial or employment records of Defendant's third-party employees for use in general law enforcement outside of this lawsuit, they remain free to serve numerous other forms of lawful process such as a subpoena, search warrant, etc.

situations, the existing regulations allow an agency to comply with the court order without fear of being in violation of the Federal Records Act. NARA expects that the court has considered all applicable laws when entering such orders and that they are necessary for the administration of justice.").

Plaintiff contends it is premature to conclude that confidential discovery materials produced in this case will qualify as "temporary records" under 36 C.F.R. § 1220.18 because no determination has been made at this point as to whether the litigation case file qualifies as permanent or temporary. (Dkt. 50-1 at 25 n.15.) According to the U.S. Department of Labor, Office of the Solicitor's NARA-approved records schedule effective since 2014, only historically significant litigation case files will be deemed permanent. See SOL RIM: New Schedule (DAA-0174-2013-0006) Implementation, at 5.[6] "Only approximately 2-3% of all government records are deemed significant, and these records document changes and major events in the nation's history." Id. Litigation case files not meeting the definition of historically significant are deemed temporary and set for destruction as early as 1 year after the end of the calendar year which the file is closed, "based on business needs of the practice/program area." Id. at 7. The Court acknowledges that Plaintiff may not yet know if this case is going to meet the definition of historically significant. Therefore, the Court will permit Plaintiff to seek relief from the requirement to return, destroy, or redact confidential materials at the end of the litigation if Plaintiff ultimately designates this litigation case file as historically significant and thus deems the records to be permanent. With this limited exception, the Court believes that Plaintiff can comply with the obligation to return, destroy, or redact confidential materials at the end of the litigation consistent with the Federal Records Act. See Rhodes v. Pfeiffer, 2017 WL 11048475, at *2 (C.D. Cal. Sept. 12,

---

[6] Available at https://www.archives.gov/files/records-mgmt/rcs/schedules/departments/department-of-labor/rg-0174/daa-0174-2013-0006_sf115.pdf.

2017) (rejecting argument that Federal Records Act conflicts with requirement to return or destroy protected material in stipulated protective order).

Finally, the Court notes that FOIA contains exemptions for both confidential financial information and personnel files, the disclosure of which would constitute an unwarranted invasion of personal privacy. See 5 U.S.C. § 552(b)(4), (6). Thus, the Court believes that Plaintiff can comply with the obligation to return, destroy, or redact confidential materials at the end of the litigation consistent with FOIA. See, e.g., Pomares v. Dep't of Veterans Affs., 113 F.4th 870, 881 (9th Cir. 2024) ("FOIA exempts from disclosure 'trade secrets and commercial or financial information obtained from a person and privileged or confidential.'"); id. at 883 ("Agencies may withhold 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'"). By permitting Plaintiff to simply redact all confidential information from the discovery materials produced in this lawsuit, Plaintiff would be able to retain the redacted documents and produce the non-exempt portions of documents in response to a FOIA request.

# V.
# CONCLUSION

Consistent with the foregoing, the Court issues the following limited Protective Order:

(1) **Scope:** This Protective Order only applies to the PII, as well as confidential financial and employment information of Defendant's third-party employees.

(2) **Definitions:** The PII, as well as confidential financial and employment information of Defendant's third-party employees produced to Plaintiff through discovery in this action and designated as confidential by Defendant shall be defined as "Confidential Discovery Material."

        Documents and information containing Confidential Discovery Material shall be defined as "Confidential Documents."  PII shall be defined as any "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual."  <u>See Guidance on the Protection of Personally Identifiable Information (PII)</u>, https://www.dol.gov/general/ppii (last accessed Dec. 17, 2025). Confidential financial and employment information shall be defined according to well-established case law governing exemptions 4 and 6 to FOIA.  <u>See</u> 5 U.S.C. § 552(b)(4), (6); <u>see, e.g.</u>, <u>Pomares</u>, 113 F.4th at 881, 883.

(3) **Procedure for Designation:**  Defendant shall be permitted to designate documents and information produced in discovery in this action as confidential if they contain the PII, confidential financial information, or confidential employment information of Defendant's third-party employees.  If Plaintiff disputes any such designation, the parties should meet and confer pursuant to the Local Rules and then seek an informal discovery conference pursuant to the Court's rules for resolving discovery disputes.  <u>See</u> https://apps.cacd.uscourts.gov/Jps/honorable-a-joel-richlin.

(4) **Permissible Use:**  Confidential Discovery Material cannot be publicly disclosed, shared beyond the parties to this action, or used by Plaintiff for any purpose other than this litigation.  The parties can share Confidential Discovery Material with their attorneys and attorney staff who have a need to review the material for purposes of this litigation based on the understand that the parties and counsel of record will be subject to sanctions for any violation of the terms of this Protective Order.  The parties can share Confidential Discovery Material with

their external experts and consultants who have a need to review the material so long as they agree in writing to be bound by the terms of this Protective Order.  If Plaintiff subsequently names any of Defendant's employees as a defendant in the action, Plaintiff can publicly identify that employee by name and title.  Plaintiff can publicly disclose, share beyond the parties to this action, and use for any purpose Confidential Documents so long as all Confidential Discovery Material is redacted.  Plaintiff can publicly disclose non-sensitive facts such as the overtime rates paid by Defendant, or the numbers and titles of alleged victims, so long as Plaintiff anonymizes the information.

(5) **Procedure at End of Case:**  Within 90 days of the conclusion of this litigation, which shall be defined as entry of final judgment no longer subject to appeal, Plaintiff shall either:  (a) return all Confidential Documents; (b) destroy all Confidential Documents; or (c) redact all Confidential Discovery Material from all Confidential Documents.  The only exception to this requirement is if Plaintiff designates this litigation case file as historically significant and thus deems the records to be permanent within the meaning of the Federal Records Act.  Within 90 days of the conclusion of this litigation, Plaintiff shall certify in writing to Defendant that Plaintiff has complied with this provision and explain how Plaintiff has complied.  If Plaintiff has designated this litigation case file as historically significant then Plaintiff shall provide a copy of the designation to Defendant.

(6) **Disputes and Enforcement:**  If there is a dispute about the interpretation of this Protective Order, the parties should meet and confer pursuant to the Local Rules and then seek an informal discovery Conference pursuant to the Court's rules for resolving discovery

disputes. See https://apps.cacd.uscourts.gov/Jps/honorable-a-joel-richlin.

Now that the Court has issued this limited protective order, the Court directs Defendant to provide supplemental responses and produce all responsive documents and information for Plaintiff's Interrogatory Nos. 1 and 2, as well as Plaintiff's Requests for Production Nos. 12, 13, 15-17, 19-25, and 27-29, consistent with the Court's July 18, 2025 Memorandum Decision and Order Denying Plaintiff's Motion to Compel, (Dkt. 46), no later than **January 9, 2026**.

IT IS SO ORDERED.

DATED: December 22, 2025

                                                HON. A. JOEL RICHLIN
                                                UNITED STATES MAGISTRATE JUDGE